IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:10-CT-3071-F

PHILLIP IRVING, )
)
    Plaintiff, )
)
v. ) ORDER
)
THE GEO GROUP, INC., *et al.*, )
)
    Defendants. )

On April 20, 2010, Phillip Irving, an inmate in the custody of the United States Bureau of Prisons currently incarcerated at Rivers Correctional Institution, filed this action alleging that the Bureau and its Director, Harley Lappin, violated his constitutional rights pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Plaintiff also alleged state law tort claims against the private corporation with whom the Bureau contracts for the management of Rivers, The GEO Group, Inc., and several GEO employees and administrators at Rivers. In short, plaintiff complains about the alleged harmful effects of his involuntary exposure to second and third-hand tobacco smoke while incarcerated at Rivers.

On July 31, 2012, the court entered an order [D.E. # 46] which, *inter alia*, granted the Bureau and Lappin's motion for summary judgment on plaintiff's constitutional claim under Bivens and granted plaintiff's motion to amend his complaint. Plaintiff's amended complaint alleged a new claim of negligence against the Bureau and Lappin pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq*. See Amend. Compl. [D.E. # 47] ¶¶ 76-84. On August 14,

2012, the United States of America[1] filed a motion to dismiss [D.E. # 48] plaintiff's FTCA claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. On August 29, 2012, plaintiff filed his response [D.E. # 51] to the motion, and on September 12, 2012, defendant filed a reply [D.E. # 52]. The matter is now ripe for decision.

Plaintiff accuses defendant of "negligence in transferring Plaintiff to Rivers" because he was a known asthmatic who should not have been transferred to a private correctional facility which both allowed smoking in some places and further allegedly failed to enforce its own rules against smoking in unauthorized areas. Amend. Compl. [D.E. # 47] ¶ 76; id. at ¶ 81. He alleges that "[e]ver since his arrival at Rivers, Plaintiff has been subjected to the harmful effects of Second Hand Smoke because smoking is prevalent and pervasive both outside and inside the housing units. There is absolutely no way for Plaintiff to avoid coming in contact with Second Hand Smoke on a daily basis." Id. at ¶ 36. Plaintiff asserts that his exposure to second-hand tobacco smoke at Rivers has exacerbated his asthma and caused "painful bronchial spasms, coughs, mucus, wheezing and shortness of breath[.]" Id. at ¶ 37. He also claims that he "fears that such conditions will increase his chances of getting chronic bronchitis, emphysema or lung cancer in the future." Id. In addition, plaintiff alleges that he "faces an increased risk of contracting lung and heart disease and other ailments" due to the second-hand smoke at Rivers. Id. at ¶ 38. Plaintiff further contends both that the United States knew he would "suffer from harmful and potential life-threatening effects of Second Hand Smoke" when it transferred him to Rivers, and that the harmful effects of second-hand

---

[1] Plaintiff's amended complaint maintained the Bureau and Lappin as defendants for purposes of the new claim under the FTCA. However, as the United States rightly recognizes, "the United States is the only proper defendant in an FTCA case." Def.'s Supp. Mem. [D.E. # 49] 1 n.1. Thus, the court will refer only to the United States as the defendant in this order.

2

smoke are well-known to the United States. Id. at ¶ 43. Plaintiff maintains that, by transferring him to Rivers, the United States breached its duty to "protect Plaintiff's health . . . from the obviously harmful effects of Second Hand Smoke," and that his injuries are "a proximate and foreseeable result" of defendant's decision to transfer him to Rivers. Id. at ¶¶ 76, 80.

The United States contends that plaintiff "failed to exhaust his administrative remedies within the two year statute of limitations" and that, therefore, the court lacks subject matter jurisdiction over any FTCA claim in the amended complaint. Def.s' Supp. Mem. [D.E. # 49] 1. The United States seeks dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

> When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff. In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth facts beyond the pleadings to show that a genuine issue of material fact exists. The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.

Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted).

In order to bring a suit against the United States under the FTCA, the plaintiff must first present his claim to the federal agency within two years of the date on which the cause of action accrues. See 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."). This two-year statute of limitations is jurisdictional and may not be waived. Kokotis v. United States Postal Service, 223 F.3d 275, 278 (4th Cir. 2000).

3

Generally, a claim accrues for purposes of the FTCA at the time of the plaintiff's injury. Gould v. U.S. Dept. Of Health & Human Servs., 905 F.2d 738, 742 (4th Cir. 1990) (citing United States v. Kubrick, 444 U.S. 111, 120 (1979)). This rule is sometimes referred to as the "injury occurrence" rule. However, in medical malpractice cases, courts may apply the "discovery rule," pursuant to which a claim accrues "when the plaintiff knows or, in the exercise of due diligence, should have known both the existence and the cause of his injury." Id. In the limited circumstances where it is applicable,[2] the discovery rule mandates that a claim will accrue when the plaintiff becomes aware of "the critical facts that he has been hurt and who has inflicted injury." Kubrick, 444 U.S. at 122-23. Once armed with these rudimentary facts, the discovery rule's requirement of due diligence compels the plaintiff to investigate to determine whether his injury was caused by negligent conduct. Id. at 123-24. Hence, "blameless ignorance" of available facts is not sufficient to delay the onset of the limitations period. See Gould, 905 F.2d at 746. Nor may a plaintiff remain willfully ignorant of the legal nature of his claim or whether his injury was caused by negligence in order to delay the accrual of his claim. Kubrick, 444 U.S. at 123-24 (rejecting argument that "if a claim does not accrue until a plaintiff is aware of his injury and its cause, neither should it accrue until he knows or should suspect that the doctor who caused his injury was legally blameworthy").

The facts relevant to the court's analysis are as follows: Plaintiff was diagnosed with asthma, at the latest, in 1996. Deposition of Phillip Irving, Def.'s Supp. Mem. ex.1 [D.E. # 49-1]. Despite this diagnosis, plaintiff smoked both marijuana and cigarettes during the years between 1996 and 2008. Id. Prior to his transfer to Rivers, plaintiff was incarcerated at a BOP facility in Petersburg,

---

[2] The Fourth Circuit has indicated its reluctance to apply the "discovery rule" in non-medical malpractice contexts. See Fowler v. United States, 1993 WL 50518, *2 n.4 (4th Cir. Feb. 25, 1993) (unpublished decision).

VA, where he admits that he smoked cigarettes. Id. Plaintiff was transferred to Rivers in April of 2008. Id. Plaintiff continued smoking cigarettes at Rivers and was also exposed to second-hand smoke. Id. Plaintiff stopped smoking in December of 2008, when he "start[ed] to feel that cigarettes was bothering" him and he began to experience increased symptoms of his asthma. Id. After he voluntarily ceased smoking in December of 2008, "from thereon, [he] began to experience occasional bouts of shortness of breath and having other breathing problems." Phillip Aff., Pl.'s Resp. ex. 1 [D.E. # 51-1] ¶ 10. On March 11, 2010, plaintiff was seen by a physician at Rivers, Dr. Summerlin, who prescribed him a Preventil inhaler to alleviate his asthma symptoms. Id. at ¶ 13. On April 8, 2011, plaintiff filed an administrative claim under the FTCA with the Bureau of Prisons concerning the injuries allegedly caused by his transfer to Rivers and resulting involuntary exposure to second-hand smoke. Id. at ¶ 27.

The United States argues as follows:

Plaintiff stated in his Complaint that the allegedly negligent actions that form the basis of his claim against the United States occurred in April 2008 when the United States transferred him to Rivers. He admitted that he was immediately aware of the fact that he was being exposed to second hand smoke when he got to Rivers. Even if he was not aware of these problems immediately, he testified that he was definitely aware of them by December 2008. Plaintiff had two years to file his administrative remedy after April 2008 (or December 2008) which would have been April 2010 (or December 2010). He did not file an administrative remedy with the BOP until April 2011. He missed his deadline by about one year (or at least three months). Accordingly, the Court should dismiss Plaintiff's FTCA claim against the United States for lack of jurisdiction.

Def.'s Supp. Mem. [D.E. # 49] 4-5 (citations omitted).

Plaintiff's response is two-pronged. First he implores to the court to apply the medical malpractice "discovery rule" set forth in Kubrick to his claim of negligent transfer. Pl.'s Resp. [D.E. # 51] 7. He reasons that, applying the discovery rule, his filing seeking an administrative remedy

5

in April of 2011 was timely because

> it was on or after March 11, 2010 Plaintiff knew for a certainty that his exposure to second hand smoke was the cause of the recurrence and exacerbation of his asthma. Hence, the two year statute of limitation in Plaintiff's case, should begin to run from March 11, 2010 [the date he saw Dr. Summerlin]. In applying this date . . . Plaintiff's administrative remedy was timely filed in April 2011, within the two year period.

Id. at 8-9. Second, plaintiff attempts to impugn defendant's reliance on plaintiff's own testimony at his deposition that he was aware of and experiencing the harmful effects of second-hand smoke in December of 2008. He argues that because "the medical effects of second hand smoke are not within the ken of the ordinary or a non-professional person such as Plaintiff, . . . the Defendant should not expect Plaintiff to know of the cause of his injury prior to him being examined and diagnosed by a medical processional." Id. at 9. Plaintiff also complains that, because he "did not get the opportunity to review and make the necessary changes to the transcripts [of the deposition], Defendant cannot wholly rely upon Plaintiff's statements where the actual medical and administrative records conflicts with Plaintiff's testimony as it relates to the dates he first knew of his injury and its cause. No one's memory is perfect. People forget things or get confused and anyone can make an innocent misstatement or two, as it appears to be in the case of Plaintiff's recollection of the actual dates he knew of his injury and its cause." Id. at 9-10.

In reply, the United States argues that plaintiff's attempt to recast his "negligent transfer" claim as a medical malpractice claim is unavailing because plaintiff has not properly alleged a medical malpractice claim against the United States and, moreover, cannot allege such a claim because "the BOP did not provide him with any medical treatment." Def.'s Reply [D.E. # 52] 2. The United States also asserts that there is no "conflict" between plaintiff's deposition testimony about when he was first aware that he was allegedly being harmed by second-hand smoke at Rivers

6

and his subsequent assertions regarding when he first sought medical treatment for the condition. Id. at 3-4.

The court agrees with defendant. Plaintiff's claim against the United States is explicitly predicated on a so-called "negligent transfer." Amend. Compl. [D.E. # 47] ¶ 76. Given the Fourth Circuit's stated reluctance to abandon the general "injury occurrence" rule of claim accrual in favor of the "discovery rule" typically reserved for medical malpractice cases, the court finds that, based upon the content of plaintiff's allegations against the United States,[3] the injury occurrence rule should apply in this case. Under that rule, plaintiff had two years from the date of his injury–the alleged negligent transfer to a facility which allowed widespread smoking–in which to complain administratively to the appropriate federal agency. Because plaintiff failed to do so, his claim under the FTCA is barred by 28 U.S.C. § 2401(b).

Moreover, even applying the discovery rule of Kubrick, plaintiff still failed to file his administrative claim within two years of its accrual. Plaintiff unequivocally testified at his deposition that the exposure to both his own smoking and the second-hand smoke at Rivers began bothering him in December, 2008. See Deposition of Irving, Def.'s Supp. Mem. ex.1 [D.E. # 49-1].[4]

---

[3] In pertinent part, plaintiff alleges that defendant failed to consider plaintiff's asthma when it transferred him to Rivers and that defendant knew that exposing non-smoking inmates to second-hand smoke would cause them to "suffer from harmful and potential life-threatening effects. See Amend. Compl. ¶¶ 34, 43.

[4] Plaintiff's attempt to undermine his own sworn testimony from his deposition is unavailing. First, as defendant argues, plaintiff's testimony about when he first noticed the alleged effects of his exposure to second-hand smoke does not conflict with the medical or administrative records plaintiff has submitted. These records only establish when plaintiff finally sought treatment and filed grievances about the alleged harmful effects of his exposure. These records do not even purport to indicate when plaintiff first started to experience the alleged effects of his exposure. While, in retrospect, plaintiff might regret the arguable legal effect of his own unequivocal
(continued...)

7

Plaintiff concedes in his affidavit that, even after he stopped smoking in December of 2008, "from there on [sic], [he] began to experience occasional bouts of shortness of breath and having other breathing problems." Irving Aff. ¶ 10, Pl.'s Resp. [D.E. # 51-1]. Where plaintiff alleges that he has a medical condition which can be exacerbated by second-hand smoke, that he was exposed to large amounts of second-hand smoke beginning in April of 2008, and he further concedes that he felt the alleged detrimental effects of the exposure even after he stopped his own smoking in December of 2008, plaintiff was at that time armed with reasonable knowledge of the "critical facts" underlying his claim.[5] Thus, even under the discovery rule, plaintiff's claim accrued at that time and it was incumbent upon him to exercise due diligence to investigate whether the problems or other health issues he allegedly was experiencing might be attributable to the negligence of defendant. Kubrick, 444 U.S. at 122-24; id. at 123 ("A plaintiff such as Kubrick, armed with the facts about the harm

---

[4](...continued)
testimony, it does not follow that his testimony conflicts with medical and administrative records and is not otherwise entitled to deference.

[5] In challenging defendant's reliance on his own deposition testimony, plaintiff argues that he could not have known in December 2008 that his exposure to second-hand smoke was injuring him because "the medical effects of second hand smoke are not within the ken of the ordinary or a non-professional person such as Plaintiff[.]" Pl.'s Resp. [D.E. # 51] 9. However, plaintiff's affidavit states that he began to suspect there was a nexus between his exposure to second-hand smoke and his health issues in October of 2009, "after reading some literature about the effects second hand smoke has on the respiratory system, and reading medical pamphlets on asthma provided by Rivers Medical Department." Irving Aff. ¶ 11, Pl.'s Resp. ex. A [D.E. # 51-1]. Indeed, plaintiff's original and amended complaints are replete with allegations about the pernicious respiratory effects of second-hand smoke, complete with citations to publicly available reports, research, and statistics. See, e.g., Amend. Compl. [D.E. # 47] ¶¶ 55-74. Thus, it is apparent that "the medical effects of second hand smoke" can be comprehended by "ordinary" persons, as even plaintiff himself purports to have done, who exercise the precise sort of "due diligence" required under the discovery rule. Plaintiff waited until October, 2009, at the earliest, to exercise any such diligence and even then still failed to file his administrative claim until April of 2011. Under these facts, plaintiff cannot be excused for his failure to file his administrative claim within two years of the time he acknowledges he first started feeling the alleged effects of his exposure to second-hand smoke.

8

Case 5:10-ct-03071-F   Document 70   Filed 02/25/13   Page 8 of 10

done to him, can protect himself by seeking advice in the medical and legal community. To excuse him from promptly doing so by postponing the accrual of his claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government."). Given plaintiff's numerous allegations about the widely known correlation between asthma symptoms and exposure to second-hand smoke, and the "obvious" risks in transferring him to Rivers, plaintiff should not be excused from failing to promptly raise his health concerns with appropriate authorities within two years of the time he first noticed any problems.[6] Accordingly, even under the inapplicable "discovery rule" of medical malpractice cases, plaintiff ultimately failed to file his administrative claim within the two-year limitations period and his claim under the FTCA is barred by § 2401(b).

For all of the reasons given above, the court finds that plaintiff failed to file his administrative claim with the appropriate federal agency within two years of the date on which the claim accrued. Accordingly, the court lacks subject matter jurisdiction over plaintiff's claim under the Federal Tort Claims Act. The United States' motion to dismiss [D.E. # 48] plaintiff's FTCA claim pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is GRANTED. Defendants Federal Bureau of Prisons and Harley Lappin are hereby DISMISSED as parties to this suit.

---

[6] It is also worth observing that plaintiff's April 8, 2011, filing of his administrative claim, as a predicate to the filing of his FTCA claim in the amended complaint, occurred mere days after the Bureau and Lappin filed their motion for summary judgment on plaintiff's constitutional claims on March 29, 2011. As found by the court in its previous order [D.E. # 46], plaintiff conceded that the Bureau and Lappin were entitled to summary judgment on his constitutional claims. It therefore appears that plaintiff filed his administrative claim, and concocted his convoluted theory that he was not aware of any alleged harm to him until March 11, 2010, as a means of ensuring that the federal defendants from his original action would remain parties to his suit.

SO ORDERED. This the 12 day of February, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge